Argued and submitted June 24, reversed and remanded August 5, 1998

Alice R. SPADY,
*Appellant,*

*v.*

Myrna M. HAWKINS,
and David Van Duzen,
*Respondents.*

(19246; CA A98606)

963 P2d 125

Garvin Reiter argued the cause for appellant. With him on the brief was Oregon Legal Services Corp.

No appearance for respondents.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

HASELTON, J.

## HASELTON, J.

The protected person, Alice Spady, appeals from an order appointing her brother, David Van Duzen, as her permanent guardian. ORS 125.305. She asserts, *inter alia*, that the appointment was erroneous because the petition for appointment of the guardian and the related notice to the protected person did not comply with the requirements of ORS 125.055 and ORS 125.070 in that they did not identify Van Duzen as the nominated person and did not include other information concerning his background, intentions, and willingness to serve. We reverse.

On May 2, 1997, Myrna Hawkins filed a petition to be appointed the temporary and permanent guardian of her daughter, Alice Spady. That petition alleged:

"Respondent [Spady] suffers from multiple sclerosis and a seizure disorder which has resulted in dementia. She has problems with ambulation, coordination, speech, poor judgment and requires assistance. Respondent has had several care givers in the past few years, but the various providers have recently been forced to quit because of concerns for their safety. Respondent has allowed transients and convicted drug dealers and users to occupy her apartment. These people have threatened the providers and put their safety at risk. Respondent allows these people into her home, but then calls the police to have them removed. The Albany police department has over 84 activity reports at Respondent's home. The police have indicated that they feel neither the Respondent or care givers are safe in the home, but because of her impaired judgment, Respondent is unable to understand the health and safety risks. There is currently only one provider in the entire City that is willing to go into Respondent's home, but the police have advised that her safety is at risk. If she discontinues her service, Respondent will be left with no care.

"A psychologist has evaluated the Respondent and agrees with the treating physician that a Guardianship is needed. The specific purpose of this temporary and permanent Guardianship is to place the Respondent in an appropriate facility which will allow care givers to provide for her physical and medical needs."

The petition identified Hawkins as the proposed temporary and permanent guardian.

On the same day, May 2,[1] the circuit court issued an order appointing Hawkins as Spady's temporary guardian for 30 days, pending evaluation of the petition's allegations, including Hawkins' qualifications and suitability to act as permanent guardian. ORS 125.600. At the same time, the court appointed a visitor to investigate and evaluate the allegations of the petition. ORS 125.150; ORS 125.155.

On May 5, 1997, Spady was served with a notice of "time for filing objections to appointment of temporary and permanent guardian," as well as the petition. The notice and petition identified only Hawkins as the nominated guardian.

Hawkins, as temporary guardian, subsequently placed Spady, over her objections, in a care facility in the Portland metropolitan area. On May 16, 1997, the visitor issued her report, finding that a guardianship was necessary because of Spady's deteriorating physical condition, mental instability, and suicidal ideation. However, the visitor determined that Hawkins was not qualified and suitable to serve as a permanent guardian:

> "[Spady and Hawkins] have never lived together, do not have a good relationship, and don't speak to one another on the phone or visit. I have been made aware that [Hawkins] is an active alcoholic and seldom sober. Alice hates Myrna for giving her up for adoption."

In reaching that determination, the visitor interviewed Hawkins and another relative but did not speak with Spady.[2]

On May 21, Spady sent a letter to the circuit court, objecting to Hawkins' appointment as her guardian:

---

[1] The court waived the statutory requirement of at least two days' notice to the putative protected person "due to the risk of immediate danger." *See* ORS 125.605(2).

[2] Spady does not assert that the visitor's report was inadequate or invalid in that respect. *See* ORS 125.150(3) ("A visitor appointed by the court under this section shall interview * * * the respondent or protected person at the place where the respondent or protected person is located.").

"I don't want my mother to be my guardian. She gave me up for adoption when I was a baby. Now she is trying to control my life. She has only seen me once in ten years.

"I know I can make my own decisions. I don't want a guardian. I don't need one. I'm too young to be here. I have to get out of here. It is driving me crazy."

On May 30, the court held a hearing on the appointment of the permanent guardian. Although Spady had received notice of the hearing, she did not attend.[3] At the beginning of the hearing, the court expressed concerns that

"there may be some duty here to obtain an attorney for [Spady] to represent her interests at least, and I'm not sure exactly the extent of that duty the court has, but, you know, I just feel, frankly it feels to the court that I should do something along those lines."

The following colloquy then ensued between the court and Hawkins' counsel:

"[Counsel]: [A]ctually based upon the report of the visitor which indicated that perhaps Myrna Hawkins is not the appropriate person * * * I've had Myrna withdraw her request to be the permanent guardian and she's requested that her son, David Van Duzen, be appointed.

"THE COURT: Okay, but that hasn't even been presented to Ms. Spady then?

"[Counsel]: No, because when we got the visitor's report and the Court set it for hearing, we had to see what we could do to find an appropriate guardian. My position has not changed, nor has my client's, that a guardian is appropriate here. Based upon the recommendation of the visitor, we would be willing to find a person that the visitor deems appropriate to be the guardian.

"* * * * *

---

[3] The record is unclear as to whether Spady could have attended a hearing if she had wanted to. At that time, she had been involuntarily placed in a Portland area care facility. In response to the court's questions, a social service worker who had previously assisted Spady gave contradictory answers concerning Spady's ability to leave the nursing home to attend a court hearing.

"THE COURT: Well, I'm prepared then to allow you to continue. Under those circumstances I will allow you to continue with the hearing. Why don't you—I'll just turn it over to you and we'll see where we get."

The court then heard testimony from several witnesses, including the visitor, who testified that Van Duzen would be willing to act as permanent guardian: "[H]e said he knew someone had to and he probably knew her better than most, so he was willing to do that." The court determined that Van Duzen should be appointed permanent guardian. The court concluded by observing:

"[M]y concerns at the first of the hearing having received a letter from Alice have been met, also that through questions that I asked that * * * it wouldn't really have served any purpose to have her here. She was notified of the proceeding obviously because she was able to file a response.

"* * * * *

"So that helps me there that she knew about it and I just, under the circumstances, my concerns have been allayed * * * and the testimony was very consistent so I think, you know, this is the best thing for her * * *."

On appeal, Spady challenges Van Duzen's appointment on two grounds. First, the appointment was erroneous because the notice to Spady, as the protected person, did not comply with ORS 125.055 and ORS 125.070 in that it did not identify Van Duzen as the nominated permanent guardian and did not include other information regarding Van Duzen's qualifications, suitability, and willingness to serve. Second, Spady asserts, the record does not establish by clear and convincing evidence that Van Duzen was, in fact, qualified, suitable, and willing to serve. ORS 125.305(1)(c). We reverse on the first ground and, consequently, do not address the second.[4]

Our holding is grounded in the interrelationship of several provisions of ORS chapter 125, governing the appointment of fiduciaries, including temporary and permanent guardians, in protective proceedings. ORS 125.055(2)

---

[4] Van Duzen did not file a respondent's brief or otherwise appear on appeal.

prescribes the contents of the petition initiating a protective proceeding:

"(2) A petition in a protective proceeding must contain the following information to the extent that the petitioner is aware of the information or to the extent that the petitioner is able to acquire the information with reasonable effort:

"(a) The name, age, residence address and current location of the respondent.

"(b) The interest of the petitioner.

"(c) The name, age and address of the petitioner and any person nominated as fiduciary in the petition and the relationship of the nominated person to the respondent.

"(d) A statement as to whether the person nominated to be fiduciary has been convicted of a crime, has filed for or received protection under the bankruptcy laws or has had a license revoked or canceled that was required by the laws of any state for the practice of a profession or occupation. If the nominated person has been convicted of a crime, filed for or received protection under bankruptcy laws or had a professional or occupational license revoked or canceled, the petition shall contain a statement of the circumstances surrounding those events. If the person nominated is not the petitioner, the statement must indicate that the person nominated is willing and able to serve.

"* * * * *

"(g) The factual information that supports the request for the appointment of a fiduciary or entry of other protective order, and the names and addresses of all persons who have information that would support a finding that an adult respondent is incapacitated or financially incapable.

"(h) A statement that indicates whether the nominated person intends to place the respondent in a mental health treatment facility, a nursing home or other residential facility.

"* * * * *

"(j) A statement indicating whether the person nominated as fiduciary is a public or private agency or organization that provides services to the respondent or an employee of a public or private agency or organization that provides services to the respondent."

In addition to those requirements, a petition for the appointment of a temporary guardian must allege that the putative protected person, or "respondent," "is incapacitated or a minor, that there is an immediate and serious danger to the life or health of the respondent, and that the welfare of the respondent requires immediate action." ORS 125.600(1);[5] ORS 125.605(1).

Except in circumstances where "immediate and serious danger requires an immediate appointment" of a temporary guardian, ORS 125.605(2), the respondent must be personally served with advance notice of the filing of the petition. ORS 125.060(2)(a); ORS 125.065(1). Unless subject to the "immediate danger" exception, notice of a petition for the appointment of a temporary guardian must be served "at least two days before the appointment." ORS 125.605(2). The notice of the filing of the petition for appointment of other fiduciaries, including a permanent guardian, must be served "at least 15 days before the final date for the filing of objections to the petition." ORS 125.065(3).[6]

ORS 125.070 prescribes the content of the notice required by ORS 125.060, including a copy of the petition, a description of when objections may be filed, the time and place of the hearing on the petition, and a description of the respondent's procedural rights.[7]

---

[5] ORS 125.600 provides, in part:

"(1) A temporary fiduciary who will exercise the powers of a guardian may be appointed by the court if the court makes a specific finding by clear and convincing evidence that the respondent is incapacitated or a minor, that there is an immediate and serious danger to the life or health of the respondent, and that the welfare of the respondent requires immediate action.

"* * * * *

"(3) A temporary fiduciary may be appointed only for a specific purpose and only for a specific period of time. The period of time may not exceed 30 days. The court may extend the period of the temporary fiduciary's authority for an additional period not to exceed 30 days upon motion and good cause shown. The court may terminate the authority of a temporary fiduciary at any time."

[6] The court "for good cause shown may provide for a different method or time of giving notice." ORS 125.065(4).

[7] ORS 125.070(2) provides:

"In addition to the requirements of subsection (1) of this section, a notice of a petition that is served on a respondent must contain the following:

ORS 125.075 describes extensive procedures for the respondent to object to the petition. If oral or written objections are made or filed within 15 days of the service of the notice of the filing of the petition, ORS 125.075(2), a hearing must be held on the objections. ORS 125.075(3); ORS 125.080. Procedures governing objections to the appointment of a temporary guardian are, necessarily, telescoped, with the court hearing any objections within two judicial days after they are filed. ORS 125.605(5).

Finally, the statutory scheme requires the appointment of visitors in all cases involving appointment of guardians for adult respondents. ORS 125.150(1). The visitor is required to investigate the allegations of the petition, including interviewing "a person nominated or appointed as fiduciary," ORS 125.150(3), and must file a written report addressing, *inter alia*:

"(a)   A statement of the visitor's belief about whether the allegations contained in the petition are substantially correct, whether the appointment of a fiduciary is necessary and whether the nominated fiduciary is qualified and willing to serve.

"* * * * *

---

"(a) An explanation of the purpose and possible consequences of the petition.

"(b) A statement that financial resources of the respondent may be used to pay court-approved expenditures of the proceeding.

"(c) Information regarding any free or low-cost legal services and other relevant services available in the area.

"(d) Information on any appointment of a visitor and the role of the visitor.

"(e) A statement of the rights of the respondent as follows:

"(A) The right to be represented by an attorney.

"(B) The right to file a written or oral objection.

"(C) The right to request a hearing.

"(D) The right to present evidence and cross-examine witnesses at any hearing.

"(E) The right to request at any time that the power of the fiduciary be limited by the court.

"(F) The right to request at any time the removal of the fiduciary or a modification of the protective order."

"(c)   The recommendations of the visitor with regard to the suitability of the nominated fiduciary, any limitations that should be imposed on the fiduciary and the need for further evaluation.

"(d)   The belief and recommendation of the visitor on any issue the court specifically asks the visitor to investigate regarding the propriety of appointing a fiduciary for the respondent."

ORS 125.155(2)(a), (c), (d). *See also* ORS 125.605(4) (governing appointment of visitor and content of visitor's report in cases of appointment of temporary fiduciary).

The statutory scheme is, thus, an integrated whole, designed to give the putative protected person meaningful information, notice, and opportunity to be heard, subject to the special circumstances attending the appointment of temporary fiduciaries. Those provisions embody a recognition that imposition of a guardianship can severely impair personal liberties. *See generally Grant v. Johnson*, 757 F Supp 1127, 1133-34 (D Or 1991) (addressing liberty interests implicated by appointment of temporary guardians; holding that former statutes governing appointment of temporary guardians did not comport with fundamental due process). Similarly, the provisions pertaining to the appointment of visitors are designed to give the court meaningful information not only about the respondent's incapacity, but also, and as importantly, about the nominated person's suitability to act as a permanent guardian.

In this case, the only petition was the May 2, 1997, petition to appoint Hawkins as the temporary and permanent guardian. That petition did not mention Van Duzen, much less nominate him as Spady's permanent guardian, and did not provide the additional information regarding his background, his intentions, and his willingness to serve, as required under ORS 125.055(2), (3). From the face of the petition and the notice, Spady had no reason to know that there was any possibility that Van Duzen—or, indeed, anyone other than Hawkins—might be appointed, much less to

object to such an appointment. In short, the last-minute substitution of Van Duzen for Hawkins circumvented and subverted the rigorous and orderly notice and hearing protections of chapter 125 pertaining to the appointment of permanent guardians.[8]

We appreciate that the trial court was faced with a difficult situation, given Spady's apparent incapacity and Hawkins' unsuitability to act as permanent guardian. However, the court could not appoint Van Duzen as permanent guardian without giving Spady adequate notice. Significantly, the statutes do provide a solution to the seeming dilemma that arises when a nominated guardian proves inappropriate, but the prospect of leaving an incapacitated person without protection or oversight seems unacceptable. The court could properly have continued Hawkins' temporary guardianship, or could have entertained the filing of a new or amended "emergency" petition nominating Van Duzen as temporary guardian, pending the filing of, and any objections to, an amended petition nominating Van Duzen as permanent guardian. *See* ORS 125.600(1), (3); ORS 125.605.

Reversed and remanded.

---

[8] We note that ORS 125.055(2) requires that the petition contain the prescribed information only "to the extent that the petitioner is aware of the information or * * * is able to acquire the information with reasonable effort." Here, it was petitioner who suggested the substitution of Van Duzen and, in doing so, obviously both had information about him and could have acquired it with reasonable efforts. Under those circumstances, that language in the statute does not excuse the filing of a new petition or an amended petition nominating the person to be substituted.