No. 739          August 20, 2025          659

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of Moises Jesus Carreno De La Cruz.

Maria De Jesus DE LA CRUZ GOMEZ,
*Petitioner-Appellant,*
*and*

Moises Jesus Carreno DE LA CRUZ,
*Protected Person-Appellant.*

Washington County Circuit Court
23PR01959; A183851

Andrew Erwin, Judge.

Argued and submitted February 18, 2025.

MariRuth Petzing argued the cause for appellants. On the brief were Trena Klohe and Oregon Law Center.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

EGAN, J.

Reversed and remanded.

**EGAN, J.**

In this vulnerable youth guardianship case, petitioner (youth's mother) appeals the trial court's dismissal of her petition for appointment as guardian. Mother argues that youth's status as a vulnerable youth alone satisfies the statutory requirements for a vulnerable youth guardianship and that the court erred in requiring her to show that the guardianship was "necessitated by the circumstances justifying the appointment" under ORS 125.300(1)(b). We agree with the trial court that the vulnerable youth designation, by itself, is not sufficient to establish entitlement to a guardianship, but we also agree with mother that the trial court misread ORS 125.300(1)(b) to require more than it does. Because the trial court applied the wrong analysis to the issue before it, we reverse and remand under the correct standard.

## BACKGROUND

The relevant facts are undisputed. Youth was born in Mexico and abandoned by his father as an infant. Petitioner was unable to adequately care for or protect him there. In 2018, when youth was 13, petitioner and youth fled to the United States. Since then, petitioner has provided youth with a safe, stable home and managed his education and health care. In November 2023, shortly after youth turned 18, petitioner petitioned the court under ORS 125.300 to be appointed as his guardian to help mitigate the lingering effects of abandonment and neglect. Youth consented to the petition.

At a February 2024 hearing held on the court's own motion, the trial court found beyond a reasonable doubt that youth qualified as a "vulnerable youth." Nevertheless, the trial court dismissed the guardianship petition for lack of evidence demonstrating that the guardianship was "necessitated by circumstances justifying the appointment." That phrase appears in ORS 125.300(1)(b), which provides:

> "A guardian may be appointed for an adult person if there is clear and convincing evidence that the person is a vulnerable youth. A guardianship for a vulnerable youth must be designed to encourage the development of maximum self-reliance and independence of the vulnerable

youth and may be ordered only to the extent that the vulnerable youth consents and that is *necessitated by the circumstances justifying the appointment* of a guardian for a vulnerable person."

(Emphasis added.). The trial court construed that statute to require—as a precondition to granting the petition—that petitioner establish that the guardianship was "necessitated by the circumstances." And it construed that phrase to mean that a guardianship must be justified by a "clear and present threat" or a "manifest necessity."

Petitioner countered that, without a guardianship, youth would not be able to pursue Special Immigrant Juvenile Status (SIJS) and could face deportation, which she argued was the clear and present threat. Petitioner also noted that, while she continues to care for youth, she can no longer legally access his medical or educational records without guardianship, and that her access to those records was necessary in ensuring his continued well-being and success into young adulthood. The court found those reasons insufficient and dismissed the petition without prejudice.

Petitioner now appeals, arguing that the court misconstrued the statute. Petitioner argues that the only requirements necessary to grant the guardianship are laid out in ORS 125.305(1) and that, as a practical matter, those conditions are necessarily satisfied whenever a youth qualifies as a "vulnerable youth." Although ORS 125.300(1)(b) says that a guardianship may be ordered "only to the extent" that youth consents and it is "necessitated by the circumstances justifying the appointment," petitioner argues that those considerations guide the *scope* of the guardianship—they are not preconditions to granting the guardianship at all.

## STANDARD OF REVIEW

We review the interpretation and application of statutes for legal error. *State v. Spainhower*, 251 Or App 25, 27, 283 P3d 361 (2012). In doing so, we examine the text of the statute in context and, when appropriate, consult legislative history and canons of construction. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

ANALYSIS

Vulnerable youth guardianships are a type of guardianship specifically for immigrant youth between the ages of 18 and 21 who are experiencing vulnerability due to abuse, neglect, or abandonment. These guardianships are intended to facilitate ongoing care and supervision for vulnerable youths, and they are often sought to help vulnerable youths access legal protections like SIJS. SIJS is a pathway to lawful immigration status in the United States for certain unmarried youth who have been abused, neglected, or abandoned by one or both parents. It allows eligible individuals to obtain a green card and work authorization in the United States, thereby avoiding future deportation. One of the requirements of the SIJS pathway is that a state juvenile court determines that it is not in the youth's best interest to return to their home country. As explained more fully below, vulnerable youth guardianships were created to help vulnerable youths satisfy that SIJS requirement.

The requirements to appoint a guardian for a vulnerable youth are found at ORS 125.305(1):

"(1)   After determining that conditions for the appointment of a guardian have been established,[1] the court may appoint a guardian as requested if the court determines by clear and convincing evidence that:

"(a)   The *** respondent is a vulnerable youth;

"(b)   The appointment is necessary as a means of providing continuing care and supervision of the respondent; and

"(c)   The nominated person is both qualified and suitable, and is willing to serve."

ORS 125.005(12) defines a "vulnerable youth" as an individual who (1) is at least 18 but not yet 21; (2) is eligible for classification under 8 USC 1101(a)(27)(J)[2]; and (3) cannot

---

[1] We acknowledge that this phrase reads as if the statute does not specify all of the requirements for establishing guardianship. "We have been unable to determine what the phrase 'conditions for the appointment of a guardian' refers to in this case beyond those listed in paragraphs (a) through (c)." *State ex rel Juv. Dept. v. Smith*, 205 Or App 152, 158 n 4, 133 P3d 924 (2006).

[2] 8 USC 1101(a)(27)(J) provides that an immigrant present in the United States is eligible for classification if they have been placed in the custody of a

reunify with one or both parents due to abuse, neglect, or abandonment that occurred before age 18. A potential vulnerable youth may jointly petition for guardianship with a proposed guardian who is qualified, suitable, and willing to serve. ORS 125.305. Where a vulnerable youth guardianship is appropriate, the court shall consider the information in the petition to make a guardianship order that is "no more restrictive upon the vulnerable youth's liberty than is reasonably necessary to protect the person." ORS 125.305(2).

The question presented in this case revolves around the proper construction of ORS 125.300(1)(b), which provides:

> "A guardian may be appointed for an adult person if there is clear and convincing evidence that the person is a vulnerable youth. A guardianship for a vulnerable youth must be designed to encourage the development of maximum self-reliance and independence of the vulnerable youth and may be ordered only to the extent that the vulnerable youth consents and that is necessitated by the circumstances justifying the appointment of a guardian for the vulnerable youth."

While there is no doubt that the first sentence of that statute describes a precondition for granting a guardianship (*i.e.*, clear and convincing evidence that the person is a vulnerable youth), the question in this case is whether the second sentence sets out additional preconditions for the granting of a guardianship that are not listed in ORS 125.305(1). That is a question of statutory construction.

We begin our analysis with the statutory text and context. *See Gaines*, 346 Or at 172 (explaining that the "first step" in construing a statute is "an examination of text and context"). The first sentence of ORS 125.300(1)(b) states: "A guardian may be appointed for an adult person if there is clear and convincing evidence that the person is a vulnerable youth." Because the trial court's authority to appoint a guardian results from evidence that the youth is a "vulnerable youth" (a condition also listed in ORS 125.305(1)(a)), this sentence clearly describes a precondition for the appointment of a guardian.

---

state-appointed agency or individual due to abuse, abandonment, or neglect, and for whom it has been determined that returning to their home country would not be in their best interest.

The first part of the next sentence states that the vulnerable youth guardianship "must be designed to encourage the development of maximum self-reliance and independence of the vulnerable youth \*\*\*." By its plain terms, this part of the statute is concerned with guiding the "design" or scope of the guardianship to accomplish statutorily designated goals.

The next part of that sentence is, "\*\*\* and may be ordered only to the extent that the vulnerable youth consents and that is necessitated by the circumstances justifying the appointment of a guardian for a vulnerable youth." That is the language that the trial court ultimately relied upon in dismissing the petition, finding that mother failed to show why the guardianship was "necessitated by the circumstances." Again, mother argues that the phrase "necessitated by the circumstances justifying the appointment of a guardian for the vulnerable youth" relates explicitly to the "extent" or scope of the guardianship, rather than setting out additional prerequisites for granting the guardianship at all. The trial court disagreed, concluding that the text requires a petitioner to do more than merely establish that a youth is a vulnerable youth before a guardianship may be granted.

While both interpretations are reasonable on their face, we agree that petitioner's interpretation of ORS 125.300(1)(b) better aligns with the text and context of the statute. Initially, petitioner's interpretation is somewhat more likely considering the text. Looking at the second sentence as a whole, we see that it is concerned both with the "design" and "extent" of the guardianship, which weighs in favor of petitioner's construction. Contemplation of the "design" or "extent" of the guardianship presupposes that the petitioner has already shown their qualification for some manner of guardianship.

If the legislature had intended to add additional prerequisites to the guardianship itself, we would expect to see them listed in ORS 125.305(1) or at least in the first sentence, which states, "A guardian may be appointed for an adult person *if* \*\*\*." (Emphasis added.) The trial court reasoned that, if every vulnerable youth were entitled to guardianship, the phrase "necessitated by the circumstances"

would be unnecessary. We disagree. As mother argues, that language guides the court in shaping a guardianship that is designed to encourage development of maximum self-reliance and independence of the youth.

As noted, based on the text, both readings are plausible, although petitioner's reading is the more likely one. However, the context, specifically ORS 125.301(1), makes clear that "necessitated by the circumstances" relates to the scope of the guardianship rather than stating a prerequisite for its grant. Again, ORS 125.305(1) sets out the conditions under which a court must appoint a guardian. The statute requires clear and convincing evidence that:

"(a)   The respondent is a minor in need of a guardian, the respondent is incapacitated or the respondent is a vulnerable youth;

"(b)   The appointment is necessary as a means of providing continuing care and supervision of the respondent; and

"(c)   The nominated person is both qualified and suitable, and is willing to serve."

ORS 125.305(1)(a)-(c). That statute makes clear that the vulnerable youth designation is one of three requirements that a petitioner seeking a vulnerable youth guardianship must establish and one of those three requirements is that the proposed guardianship is necessary as a means of providing continuing care and supervision. That determination must be based on the specific facts presented in the petition and any supporting evidence. While the trial court correctly recognized that a showing of necessity beyond the fact that the youth is a vulnerable youth was required, it incorrectly grounded that requirement in ORS 125.300(1)(b), which governs the scope of the guardianship, not the conditions for appointment. Looking to ORS 125.305(1)(b), we conclude that the "necessity" requirement requires only a fact-specific showing that the guardianship is necessary to support the youth's well-being in a practical and ongoing way.

Although the statute does not provide specific examples of what may satisfy that requirement, the legislative history offers guidance on the types of circumstances that

can demonstrate necessity under ORS 125.305(1)(b). In 2021, Oregon was the fifth state in the nation to adopt these protections for vulnerable youth, joining California, Washington, Colorado, and New York. The law was enacted to help protect an estimated 70 to 100 vulnerable youth in Oregon each year by providing a pathway to pursue SIJS and protection from future deportation. As Judge Eva Temple explained in her testimony to the House Civil Law Subcommittee:

> "Although the federal law was enacted more than twelve years ago, Oregon law has a gap that prevents its full use here. Under current Oregon law, guardians may only be appointed for persons who are either minors or incapacitated. There is no provision for the appointment of a guardian for the reasons outlined in the federal SIJ statutes, and therefore, no way to access this protection for youth. SB 572 addresses this gap."

Testimony, House Judiciary Committee, Subcommittee on Civil Law, SB 572, May 5, 2021 (statement of Judge Eva Temple). Here, the evidentiary record shows that mother explained that the guardianship would not only help youth navigate health care and education systems, but also pursue SIJS, thereby preventing the likelihood of future deportation proceedings against youth. Fear of deportation often motivates guardianship petitions, as seen in cases where youth seek protection from removal to countries where they face harm or instability. *See, e.g., Moreno Galvez v. Cuccinelli*, 387 F Supp 3d 1208 (WD Wash 2019) (the plaintiff utilized Washington's vulnerable youth guardianship program to appoint a relative as his guardian and obtain findings necessary for SIJ status, which was critical in providing stability and addressing plaintiff's fear of deportation). The legislative history indicates that the necessity requirement in ORS 125.305(1)(b) was not intended to impose a high barrier to guardianship for vulnerable youth, but rather to ensure that petitioners explain why the youth needs this protection—whether to pursue SIJS or for other reasons. To meet that requirement, the petition must include fact-specific information showing how the guardianship will support the continuing care and supervision of the youth—which, as in this case, often involves demonstrating how it will help the youth obtain SIJS.

We conclude that, while the conditions that make someone a vulnerable youth do not automatically compel a finding that appointment of a vulnerable youth guardian is necessary, in this case, the petition included information showing why the guardianship was necessary—particularly to pursue SIJS. The trial court therefore erred in dismissing petitioner's petition for vulnerable youth guardianship. Accordingly, we reverse and remand for further proceedings.

Reversed and remanded.