532 May 13, 2026 No. 406

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Guardianship of
Melanie Christine McCoy, aka Melanie Christine Willer.

Melanie Christine McCOY,
aka Melanie Christine Willer,
*Appellant,*

*v.*

Spencer C. McCOY
and Nina C. McCoy,
*Respondents.*

Multnomah County Circuit Court
24PR00539; A184829

Patrick W. Henry, Judge.

Argued and submitted November 10, 2025.

David Boyer argued the cause for appellant. Also on the opening brief was Disability Rights Oregon. Also on the reply brief were Meghan Apshaga and Disability Rights Oregon.

George W. Kelly argued the cause and filed the brief for respondents.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

KAMINS, J.

**KAMINS, J.**

In this guardianship case, appellant challenges the trial court's judgment appointing her parents as co-guardians. In a single assignment of error, appellant contends that the trial court erred in concluding that she was incapacitated within the meaning of ORS 125.005(5). Because the facts do not establish that appellant was incapacitated under that statute, we reverse and remand with instructions to enter an order terminating the guardianship.[1]

As discussed below, in determining whether to grant a guardianship, a court must determine three things: (1) whether the respondent is incapacitated; (2) whether appointment of a guardian is necessary to provide continuing care and supervision; and (3) whether the proposed guardian is qualified, suitable, and willing to serve. *De La Cruz Gomez and De La Cruz*, 342 Or App 659, 662, 577 P3d 1200 (2025). The dispositive issue here is whether the trial court correctly determined that appellant was incapacitated. We begin with a brief overview of adult guardianships.

## I.  ADULT GUARDIANSHIPS

An adult guardian is a person appointed by the court to promote and protect the well-being of an incapacitated adult. ORS 125.300(1)(a); ORS 125.305(1)(a). Guardians have a statutory duty to promote the protected person's self-determination and to make decisions that the guardian reasonably believes the person would make if able. ORS 125.315(1)(g), (h). A guardian's duties include providing for the protected person's "care, comfort, and maintenance." ORS 125.315(1)(b). That may include establishing residence, taking reasonable care of the person's personal effects, arranging for the protected person's training or education, and making health care decisions. ORS 125.315 (1)(a) - (c).

A guardianship proceeding begins with the filing of a petition. ORS 125.010(2). The petition must include

---

[1] Because we conclude that the trial court erred in concluding that appellant was incapacitated, we do not need to address appellant's additional arguments that the remaining statutory requirements for the appointment of a guardian were not satisfied.

identifying information about the respondent, the petitioner's interest, identifying information and background disclosures regarding the proposed guardian, a statement that the proposed guardian is willing and able to serve, and information about any existing fiduciaries or legal representatives for the respondent. ORS 125.055(2).

When a person petitions for an adult guardianship, the court must appoint a court visitor. ORS 125.150(1)(a)(A) ("The court *shall* appoint a visitor upon the filing of a petition in a protective proceeding that seeks the appointment of * * * [a] guardian for an adult respondent." (Emphasis added.)); *see also Spady v. Hawkins*, 155 Or App 454, 462, 963 P2d 125 (1998) (noting that the statutory scheme requires the appointment of visitors in all cases involving appointment of guardians for adult respondents); Rachele R. Selvig, *Guardianships, Conservatorships, and Transfers to Minors in Oregon* § 3.2-2(b) (2023 ed) ("The involvement of a visitor is a required and integral part of the appointment of a guardian for an incapacitated adult.").

Within 15 days of being appointed, the visitor interviews the respondent and the petitioner and files a report in writing with the court. ORS 125.155. That report must include a statement on the correctness of the allegations in the petition, the need for guardianship, the respondent's willingness to have a guardian appointed, recommendations regarding the appointment, any express communication made by the respondent relating to representation by counsel, and the suitability of the proposed guardian. ORS 125.155(2); ORS 125.150(6), (7), (10) - (12). In making a guardianship order, the court must consider the visitor's report. ORS 125.305(2); *see also Spady*, 155 Or App at 463 (explaining that "the provisions pertaining to the appointment of a visitor are designed to give the court meaningful information * * * about the respondent's incapacity").

After considering the visitor's report and any other evidence presented at the hearing, including testimony, the court may appoint a guardian only if it determines by clear and convincing evidence that: (a) the respondent is incapacitated; (b) appointment is necessary to provide continuing care and supervision; and (c) the proposed guardian is

qualified, suitable, and willing to serve. ORS 125.305. Any guardianship must be no more restrictive than reasonably necessary. *Id.*

The petitioner will specify whether the petition is for a temporary or an indefinite guardianship. ORS 125.055(1)(a). Temporary guardianships are limited to situations in which the respondent is in immediate danger and a guardian needs to be appointed quickly. *See* ORS 125.605(1) ("[A] petition for the appointment of a temporary fiduciary must contain allegations of the conditions required under ORS 125.600."[2]); ORS 125.600(1) ("A temporary fiduciary who will exercise the powers of a guardian may be appointed by the court if the court makes a specific finding by clear and convincing evidence that the respondent is incapacitated or a minor, that there is an immediate and serious danger to the life or health of the respondent, and that the welfare of the respondent requires immediate action."). For a temporary guardianship, timelines are shorter than an indefinite guardianship, but the court must still appoint a visitor to file a report on the conditions alleged to support a temporary guardianship.[3] ORS 125.605(4). A temporary guardianship may not exceed 30 days. ORS 125.600(3).

## II.   FACTS

The material facts are not in dispute. Appellant is in her mid-thirties and has a long history of mental illness, including schizophrenia. For seven years prior to her guardianship proceedings, she relied on shelters for food, housing, medical care, clothing, and other necessities. She was sometimes asked to leave shelters due to erratic and unsafe behaviors.

Appellant was admitted to Unity Center for Behavioral Health. While hospitalized, she sought discharge

---

[2] ORS 125.005(2) defines "fiduciary" as "a guardian or conservator appointed under the provisions of this chapter or any other person appointed by a court to assume duties with respect to a protected person under the provisions of this chapter."

[3] For a temporary guardianship, the visitor has three days after the appointment of the temporary guardian to conduct an interview with the respondent and then five days to report their findings to the court. This report is limited to the conditions alleged to support the appointment of a temporary guardian. ORS 125.605(4).

against the recommendations of her treatment providers and her parents, who were aware of her history of not following through with mental health treatment after discharge. Shortly thereafter, her parents petitioned for guardianship, first temporary and then for an indefinite period of time.

At the temporary guardianship hearing, the court visitor, Garman, recommended that appellant's parents be appointed as guardians in order to move appellant's "treatment forward" and explore residential options. The court concluded that a temporary guardianship was necessary due to appellant's incapacity and that appellant's parents were suitable and willing to serve.

A subsequent hearing was held on the petition for indefinite guardianship. Garman again recommended the appointment of a guardian, citing appellant's persistent mental health challenges with schizophrenia, and testifying that with each hospitalization, the "baseline of her functional abilities appears to go down just a bit." Garman testified that appellant's mental health symptoms interfered with her ability to access shelter, as at times she had been asked to leave shelters due to erratic behaviors. Garman opined that, without appropriate services and assistance, appellant's erratic behavior could make her a target in the community and subject her to exploitation. Garman described appellant's symptoms as cyclical and at times severe, including delusions, but not severe enough to warrant civil commitment. She recommended a permanent guardianship, explaining that a guardian would be able to voluntarily admit appellant in those times where her symptoms intensified.

Appellant's mother testified that she had assisted appellant in obtaining an identification card from the Department of Motor Vehicles, although she acknowledged that a guardianship was not required for that purpose. She also testified that a social worker with Unity Center for Behavioral Health scheduled a medical appointment for appellant before she was discharged, and that appellant was able to attend the appointment independently.

In ruling on the petition, the trial court found that appellant was meeting her basic needs through shelter

services, was attending medical appointments on her own, and was not likely to suffer physical injury. The court explained, however, that appellant's mental illness "gets in the way" of her remaining in shelters, resulting in periods during which she is unhoused. The court therefore granted the guardianship, citing appellant's chronic mental illness and the likelihood that it would continue if not effectively treated:

> "And in terms of serious physical injury or illness likely to occur, \*\*\* the illness that we're talking about here is \*\*\* schizophrenia. And that is already present, but it's likely to occur/recur in a more significant way from time to time."

This appeal followed.

### III.   ANALYSIS

The question before us is whether those facts satisfy the statutory definition of "incapacity" under ORS 125.005(5) justifying the appointment of a guardian. We review the interpretation and application of statutes for legal error. *State v. Spainhower*, 251 Or App 25, 27, 283 P3d 361 (2012). In doing so, we look to the legislature's intent, as evidenced by the text and context of the statute and any legislative history that is useful to the analysis. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

A.   *Text*

ORS 125.005(5) defines "incapacitated" as:

> "a condition in which a person's ability to receive and evaluate information effectively or to communicate decisions is impaired to such an extent that the person presently lacks the capacity to meet the essential requirements for the person's physical health or safety. 'Meeting the essential requirements for physical health and safety' means those actions necessary to provide the health care, food, shelter, clothing, personal hygiene and other care without which serious physical injury or illness is likely to occur."

Thus, the text of the statute requires a petitioner to establish three components: (1) an impairment in the person's ability to receive and evaluate information or to communicate decisions; (2) a present inability to meet the essential requirements for physical health and safety without risking

serious illness or injury; and (3) a causal nexus between the impairment and that inability. *Schaefer v. Schaefer*, 183 Or App 513, 517, 52 P3d 1125 (2002).

The first sentence establishes the impairment and the causal nexus requirements: incapacity exists only when the impairment results in a present inability to meet essential needs. The second sentence defines what those essential needs entail and limits the inquiry to circumstances which, absent those necessities, "serious physical injury or illness is likely to occur."

"Likely" means "of such a nature or so circumstanced as to make something probable." *Webster's Third New Int'l Dictionary* 1310 (unabridged ed 2002). The statute thus requires proof that, without a guardianship, the occurrence of serious physical injury or illness is probable, not merely possible.

B. *Context*

The context of ORS 125.005(5) further supports the conclusion that whether serious illness or injury is "likely" to occur must be established by more than mere speculation. ORS 125.005 provides definitions for ORS 125.300, which governs the appointment of guardians. *See State v. Meek,* 266 Or App 550, 556, 338 P3d 767 (2014) ("Text, however, cannot be viewed in isolation, but must, instead, be considered in the totality of the statutory framework."). Under ORS 125.300(1)(a), a court may appoint a guardian for an adult only "as is necessary to promote and protect the well-being of the person," and "only to the extent necessitated by the person's *actual* mental and physical limitations." (Emphasis added.) The legislature's use of the word "actual" reinforces that speculative or potential future harms are insufficient to justify the imposition of a guardianship.[4] A guardian

---

[4] This reading is consistent with our interpretation of the civil commitment statutes, which likewise require clear and convincing evidence that a person is dangerous to self or others, or unable to provide for basic needs, before that person can be involuntarily committed due to the "strong personal and liberty interests at stake." *State v. D.M.*, 245 Or App 466, 471, 263 P3d 1086 (2011); *see also* ORS 426.130(1)(a) (setting out the standard for civil commitment due to mental illness); *State v. S. E. R.*, 297 Or App 121, 122, 441 P3d 254 (2019) (holding that a person is dangerous to self if a mental disorder creates a nonspeculative risk of serious physical harm in the near future); *State v. P. D.*, 333 Or App 738, 742,

therefore may be appointed only when the respondent's present circumstances and actual limitations justify it.[5]

## C. *Application*

Considered together, the text and context of ORS 125.005(5) reflect the legislature's intent to require nonspeculative evidence that serious illness or injury is "likely to occur." The undisputed facts in the record do not support a finding of incapacity within the meaning of the statute.

Garman's report and testimony suggested that appellant could possibly—though not probably—become homeless and a "target in the community." But those possibilities do not establish a likelihood of serious physical injury or illness. The record reflects that appellant has previously experienced periods of homelessness yet continued to meet the essential requirements for her physical health and safety without a guardianship. The trial court expressly found that appellant was meeting her basic needs and was not likely to suffer serious physical injury. Those findings are incompatible with a determination that serious physical injury or illness is likely to occur absent the appointment of a guardian.[6] Because the evidence does not establish a nonspeculative risk of serious physical injury or illness, the trial court erred in concluding that appellant was incapacitated within the meaning of ORS 125.005(5). Accordingly, we reverse and remand with instructions to enter an order terminating the guardianship.

Reversed and remanded.

---

553 P3d 1063 (2024) (holding that inability to meet basic personal needs supports commitment only when it creates a nonspeculative risk of serious physical harm likely to occur in the near future).

[5] The parties have not pointed us to any pertinent legislative history, and, other than the discussion above, we have not independently sought such legislative history, as it is unnecessary for us to do so in light of the text and context of ORS 125.005. ORS 174.020(3) ("A court may limit its consideration of legislative history to the information that the parties provide to the court."); *see also Baldwin v. Seida*, 297 Or App 67, 76, 441 P3d 720, *rev den*, 365 Or 769 (2019) ("We need not exercise our discretion to seek legislative history, particularly when unnecessary.")

[6] To the extent the trial court made a finding that respondent's worsening schizophrenia symptoms constituted a "serious illness" that was likely to occur absent guardianship, that finding is not supported by nonspeculative evidence in the record. While Garman did testify that respondent had a history of refusing to follow through with treatment, there was no evidence that the guardianship would prevent the symptoms of a chronic, recurrent illness.